**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LEONIDES GUEVARA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **3:17-CV-2282** |
| | : | **(JUDGE MARIANI)** |
| **CONSTAR FINANCIAL** | : | |
| **SERVICES, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Pending before the Court are Plaintiff's Motion for Summary Judgment as to Liability (Doc. 56) and Defendant's Motion for Summary Judgment (Doc. 58).

This case arises out of a claim that the Defendant Constar Financial Services violated the Fair Debt Collection Practices Act ("FDCPA"), which prohibits the use of false, misleading or deceptive statements. 15 U.S.C. § 1692e. Plaintiff Leonides Guevara first filed his Complaint on December 11, 2017. (Doc. 1). On February 16, 2018, Defendant moved for judgment on the pleadings. (Doc. 12). The motion was denied on June 14, 2018. (Doc. 28). On July 6, 2018, Plaintiff filed his Amended Complaint, alleging Defendant mailed a letter to Plaintiff, which contained a statement that was "false, deceptive or misleading" and the Defendant "never took any action to correct the false, deceptive or misleading information that it had provided to Mr. Guevara." (Doc. 32, at ¶¶ 25, 27). On July 18, 2018, Defendant

1

filed an Answer to the Amended Complaint. (Doc. 36).

Following the completion of discovery, on April 5, 2019, Plaintiff filed a Motion for Summary Judgment as to Liability (Doc. 56) and Defendant filed a Motion for Summary Judgment (Doc. 58). The parties have fully briefed the motions and they are ripe for decision. For the reasons set forth below, the Court will deny Plaintiff's Motion for Summary Judgement as to Liability (Doc. 56) and deny Defendant's Motion for Summary Judgment (Doc. 58).

## II. STATEMENT OF UNDISPUTED FACTS

Plaintiff Leonides Guevara and Defendant Constar Financial Services have each submitted a Statement of Material Facts (Pl. Statement of Facts, Doc. 57; Def. Statement of Facts, Doc. 58-6) as to which they submit there is no genuine issue or dispute for trial. Each party has also submitted a response to the moving party's Statement of Material Facts (Pl. Answer to Def. Statement of Facts, Doc. 59; Def. Answer to Pl. Statement of Facts, Doc. 61), with the result being that the following facts have been admitted except as specifically noted.

Plaintiff is a "natural person who was obligated to pay a debt to Hyundai Motor Finance" ("Hyundai"). (Doc. 57, at ¶ 1; Doc. 58-6, at ¶ 1). Defendant is a limited liability corporation and a debt collector. (Doc. 57, at ¶¶ 2, 17). In January 2015, Plaintiff purchased a vehicle on credit to be used "only for personal, family, or household purposes. (*Id.* at ¶¶ 3–4). The loan ("Account") was assigned to Hyundai. (Doc. 57, at ¶ 1; Doc. 58-6, at ¶ 1).

On August 30, 2016, Hyundai charged off the Account, the balance of which was $22,878.56. (Doc. 58-6, at ¶ 2). Hyundai repossessed the vehicle due to Plaintiff's default. (Doc. 57, at ¶ 5; Doc. 58-6, at ¶ 2). After Hyundai "sold the vehicle and applied the proceeds of the sale to the outstanding loan," the unpaid balance on the Account was $13,377.23. (Doc. 57, at ¶¶ 6–7; Doc. 58-6, at ¶ 3). On November 1, 2016, Hyundai referred the Account to Defendant Constar for collection. (Doc. 57, at ¶ 8; Doc. 58-6, at ¶ 4). On November 4, 2016, Defendant sent Plaintiff a letter "advising him it had been retained to collect the Account, stating the total balance due was $13,377.23, and providing Plaintiff with information on his right to dispute or seek validation of the debt." (Doc. 58-6, at ¶ 5).

Hyundai later learned it was "entitled to receive a refund for the unused portion of an extended warranty, gap insurance, and a product related to the vehicle's tires," totaling $1,820.67 (Doc. 57, at ¶¶ 10–11). Once the refunds were considered, the amount Plaintiff owed on the account was $11,566.56. (Doc. 57, at ¶ 12; Doc. 58-6, at ¶ 8).

On December 11, 2016, Defendant sent Plaintiff a second letter ("the Letter") in an attempt to collect, listing the "Total Due" as $13,377.23. (Doc. 57, at ¶¶ 13–15, 18; Doc. 58-6, at ¶ 7). The Letter "did not inform Plaintiff that the amount due was subject to change." (Doc. 57, at ¶ 16).

The parties dispute the date on which Hyundai determined the refunds were applicable to the Account. Plaintiff asserts, "On or about November 9, 2016, Hyundai reviewed the Account and determined that Hyundai was entitled to receive refunds based

on three ancillary products which were purchased with the vehicle." (*Id.* at ¶ 9). Defendant denies this assertion stating, "The portions of the Deposition referenced in Statement 9 do not support the assertions that Hyundai reviewed the account on November 9, 2016 and/or that Hyundai determined that credits were to be received on the account." (Doc. 61, at ¶¶ 9–10). Instead, Defendant asserts, "On January 23, 2017, Hyundai received a notice of credit on Plaintiff's account which it applied to reduce the balance to $11,566.56." (Doc. 58-6, at ¶ 8).[1] Plaintiff maintains, "Hyundai had received notice on or about November 9, 2016 that refunds would be applied to Plaintiff's account. Thus, the January 23, 2017 date does not reflect when Hyundai received a notice of credit, rather it is the date that Hyundai actually processed the refund and formally applied it to Plaintiff's account." (Doc. 59, at ¶ 8).

Plaintiff asserts, "It is Defendant's position that it did not make an error on this Account. Instead, Defendant believes that Hyundai made the error." (Doc. 57, at ¶¶ 19–20). Defendant denies the latter statement: "The asserted fact is not material to Plaintiff's claim because Defendant did not engage in any further communications with the Plaintiff after Hyundai posted a credit to the account on January 24, 2019." (Doc. 61, at ¶ 19–20).

As to Defendant's credit adjustment policies, Defendant admits it "does not have a written procedure to make sure that it receives notification of credit adjustments that

---

[1] Defendant asserts in some parts of the record that Hyundai received notice of the credits and applied such credits to the Account on January 23, 2017. (*See, e.g.,* Doc. 58-6, at ¶ 8; Doc. 58-1, at 1). In other parts of the record, Defendant asserts the date was January 24, 2017. (*See, e.g.,* Doc. 61, at ¶ 9; Doc. 61, at 3).

Hyundai receives after an account has been referred to Defendant. Instead Defendant relies upon an 'unwritten procedure that Hyundai notifies [Defendant] of … credit adjustments via email.'" (Doc. 57, at 22–23(quoting Lustek Dep., at 15:10–18)). Defendant asserts, "For at least the last nine years, Constar has had policies and procedures in place in the event that Hyundai's agency support team emails Constar to update balances for a credit adjustment or payment on an account." (Doc. 58-6, at ¶ 10). When Defendant "receives notice of a credit adjustment from Hyundai, Constar's client service department notes the account and sends the information to Constar's accounting/finance department to make necessary adjustments to the account on the day the email is received." (*Id.* at ¶ 12).

While Plaintiff admits "Defendant has procedures in place if Hyundai notifies it of a credit adjustment or a payment on an account," Plaintiff denies "any implication that Defendant has procedures in place to make sure that it actually learns of a credit adjustment or a payment on an account." (Doc. 59, at ¶ 10). "Defendant's corporate designee was not aware of any written agreement between Hyundai and Defendant where Hyundai guarantees that it will always forward a notice of credit adjustment to Hyundai." (Doc. 57, at ¶ 24). Defendant is not aware if Hyundai has a procedure "to always send notice of a credit adjustment to debt collectors such as Defendant." (Doc. 57, at ¶ 25). Defendant asserts "Constar regularly receives email notifications from Hyundai whenever there is a credit adjustment as part of its normal day-to-day business activities." (Doc. 58-6, at ¶ 11). Plaintiff denies this assertion. (Doc. 59, at ¶ 11).

Constar did not receive notice from Hyundai of "any credit adjustment to Plaintiff's account." (Doc. 58-6, at ¶ 13). Defendant asserts it is "not aware of any instance other than in the [sic] case where Hyundai failed to notify Constar a credit adjustment or payment by a consumer." (Doc. 58-6, at ¶ 14). Plaintiff admits this assertion, but qualifies, "because Defendant has no procedures to determine if a refund has been received on an account, Defendant would have no way to know if there were other instances where Hyundai had failed to notify Defendant of a refund that had been received." (Doc. 59 at ¶ 14).

On August 4, 2017, Plaintiff first disputed the debt when he filed for Chapter 7 bankruptcy protection. (Doc. 58-6, at ¶ 9; Doc. 59, at ¶ 9 ("Plaintiff first learned that Defendant's collection letter contained an inflated balance shortly before August 4, 2017.")). Regarding its policies for when a consumer disputes a debt, Defendant asserts:

> Constar has written policies and procedures for handling disputes from consumers. All collectors and employees receive training on the policies, are provided copies of the policies, and are required to comply with those policies at all times. Although the written procedures are darted [sic] March 1, 2017, the same policies and procedures were in effect at all times Constar was collecting Mr. Guevara's account."

(Doc. 58-6, at ¶ 16). Plaintiff admits this assertion, but notes, "In his deposition, when Defendant's designee was asked to identify the procedures relevant to avoiding the violation here, he did not mention these dispute processing procedures. Thus, any dispute processing procedures are irrelevant, and the designee's description of them in a post-deposition affidavit is immaterial." (Doc. 59 at ¶ 16).

Plaintiff asserts "If Defendant had learned about the Refunds after it sent the Letter, Defendant would not have sent Guevara a letter informing him that the amount due in the Letter was no longer correct." (Doc. 57, at ¶ 26). Defendant denies this statement because "the asserted fact is not material given that Constar did not communicate with the Plaintiff after Hyundai posted the credit on January 24, 2017." (Doc. 61, at ¶ 26).

### III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson,* 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the

absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating

whether summary judgment should be granted, "[t]he court need consider only the cited

materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

"Inferences should be drawn in the light most favorable to the non-moving party, and where

the non-moving party's evidence contradicts the movant's, then the non-movant's must be

taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.

1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380

(2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between the
> parties will not defeat an otherwise properly supported motion for summary
> judgment; the requirement is that there be no *genuine* issue of *material* fact.
> When opposing parties tell two different stories, one of which is blatantly
> contradicted by the record, so that no reasonable jury could believe it, a court
> should not adopt that version of the facts for purposes of ruling on a motion for
> summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

In this case, the parties have filed cross-motions for summary judgment. According

to the Third Circuit:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Lawrence v. City of Philadelphia,* 527 F.3d 299, 310 (3d Cir. 2008).  Each movant must show that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the Court must deny the motions. *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008).  When reviewing each cross-motion, the Court is still bound to view the evidence in the light most favorable to the non-movant. Fed. R. Civ. P. 56; *United States v. Hall*, 730 F.Supp. 646, 648 (M.D. Pa. 1990).

## IV. ANALYSIS

Plaintiff and Defendant have filed cross-motions for summary judgment (Docs. 56, 58).  Plaintiff argues he is entitled to summary judgment on the issue of liability. (Doc. 56). Defendant asserts that it is entitled to summary judgment in all respects. (Doc. 58).

Plaintiff's Amended Complaint alleges Defendant mailed a letter to Plaintiff containing a statement of the amount of the debt, which was "false, deceptive or misleading because it did not account for the credit which would eventually be received." (Am. Compl., Doc. 32, at ¶¶ 21–25). Plaintiff further alleges Defendant "never took any action to correct the false, deceptive or misleading information that it had provided to Mr. Guevara." (*Id.*). Plaintiff alleges these actions are violative of the FDCPA's prohibitions against false,

misleading or deceptive statements. 15 U.S.C. §§ 1692e, e(2)(A), and e(10). Defendant denies these allegations. (Answer, Doc. 36, at ¶ 27).

In order to prevail on a FDCPA claim, a plaintiff must prove: "(1) [the plaintiff] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a "debt" as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Section 1692e of the FDCPA states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This section contains a list of conduct that constitutes a violation of the FDCPA. Relevant to this matter are Section e(2)(A), prohibiting "The false representation of the character, amount, or legal status of any debt"; and, Section e(10), prohibiting "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e(2)(A), e(10).

Determining whether a communication violates the FDCPA is a question of law. *Szczurek v. Prof'l Mgmt. Inc.*, 627 F. App'x 57, 60 (3d Cir. 2015); *see also Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n.2 (3d Cir. 2000)(noting that a majority of circuits have held this determination to be a question of law), *as amended* (Sept. 7, 2000).

The Third Circuit has held, "any lender-debtor communications potentially giving rise to claims under the FDCPA…should be analyzed from the perspective of the least

sophisticated debtor." *Brown v. Card Serv. Ctr.,* 464 F.3d 450, 454 (3d Cir. 2006); *Jensen v. Pressler & Pressler*, 791 F.3d 413, 420 (3d Cir. 2015)("We regularly apply the least sophisticated debtor standard to claims under § 1692e."). Because the standard is objective, the plaintiff does not need to prove he was "actually confused or misled, only that the objective least sophisticated debtor would be." *Jensen*, 791 F.3d at 419. The least sophisticated debtor standard is lower than a reasonable debtor standard. *Wilson*, 225 F.3d at 354. "A communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." *Rosenau v. Unifund Corp.,* 539 F.3d 218, 221 (3d Cir. 2008).

The Third Circuit has additionally held, "The FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011). Sections 1692e(2)(A) and e(10) are no exception. "The language of this provision creates a straightforward, objective standard. Nothing suggests that an allowance is to be made for a defendant's lack of knowledge or intent." *Glover v. F.D.I.C.,* 698 F.3d 139, 149 (3d Cir. 2012)(interpreting the language of Section 1692e(2)(A)).

However, a debt collector may still avoid liability if it can demonstrate it satisfies the bona fide error defense. A debt collector must show "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the

11

maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. §
1692k(c).

The record indicates that the parties do not dispute that Plaintiff has satisfied the first
three elements required to prove a FDCPA claim. Defendant admits Plaintiff is a "natural
person who was obligated to pay a debt" and is therefore a consumer (Doc. 57, at ¶ 1; Doc.
61, at ¶ 1). Defendant also admits that it is a debt collector and that the December 11, 2019
letter was mailed "in an attempt to collect the Account." (Doc. 57, at ¶¶ 17–18; Doc. 61 at ¶¶
17–18). The parties dispute focuses on the final element—whether the Defendant's letter
attempting to collect the Account violates a provision of the FDCPA.

Plaintiff argues that he is entitled to summary judgment on the question of liability
because "the FDCPA is a strict liability statute" and therefore "Plaintiff is entitled to a finding
of liability upon showing a violation." (Pl. Br., Doc. 60, at 7). Plaintiff argues he has
demonstrated two violations: "a false statement about the amount of the debt" and the
failure to "inform Plaintiff that the balance was subject to change." (*Id.*). Defendant responds
that it is entitled to summary judgment on Plaintiff's Amended Complaint for the following
reasons:

> First, it is undisputed that during the time Constar had the account for collection,
> it was never informed by Hyundai about posted credits. Second, the undisputed
> facts demonstrate that the total amount due was correctly stated in Constar's
> December 11, 2016 letter because no refunds had been received. Third, there
> is no allegation that Constar engaged in any collection activities after the
> December 11, 2016 letter. Moreover, even if a violation is found, Constar is
> entitled to assert the FDCPA bona fide error defense.

(Def. Br., Doc. 58-1, at 4).

## A. Plaintiff's Motion for Summary Judgment

Plaintiff's first argument in favor of its summary judgment motion is: "There can be no dispute that on or about November 9, 2016 Hyundai determined that Plaintiff's account was entitled to receive $1,820.67 in refunds related to three ancillary products that had been purchased with the Vehicle." (*Id.* at 8). Plaintiff argues that Defendant's collection letter, dated December 11, 2016, misstated the debt amount because Hyundai "knew that it would be receiving these refunds." (*Id.* at 8). Defendant asserts "Hyundai did not reduce the balance to $11,566.56 until January 23, 2017. Therefore, the December 11, 2016 letter stated the correct balance due at the time." (Def. Br., Doc. 58-1, at 4).

If Hyundai had notice of the credit adjustments on Plaintiff's account on November 9, 2016, the Letter dated December 11, 2016 may contain a false statement of the debt amount as it overstated the amount owed. *See McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 246 (3d Cir. 2014); *Martsolf v. JBC Legal Grp., P.C.,* No. CIV.A. 1:04-CV-1346, 2008 WL 275719, at *7 (M.D. Pa. Jan. 30, 2008)("A debt collector that inflates the amount of the debt, whether through unauthorized service fees or otherwise, violates [the FDCPA]"); *Taylor v. Hayes, Johnson & Conley, PLLC,* No. 3:19-CV-00931-ARC, 2019 WL 4511697, at *5 (M.D. Pa. Sept. 19, 2019)("Failing to accurately set forth the amount of money due as of the date of the debt collection demand letter constitutes a violation of §§ 1692e(2)(A) & 1692e(10)."). If the Letter contained a false statement, regardless of

13

Defendant's knowledge or intent in sending the Letter, Defendant can be held strictly liable

for the language that violates the FDCPA. *Glover,* 698 F.3d at 149.

However, Plaintiff failed to produce any evidence that Hyundai was notified of the

credit adjustments as of November 9, 2016. The cited portions of deposition of Hyundai's

representative establish that Hyundai received three refunds, but did not identify a date that

they were determined to be applicable to Plaintiff's account:

> Q. Okay. Do you know what, even if you can't assign the ancillary products to
> these three numbers, do you know what the three ancillary products are that
> generated the refunds?
> A. There was, I believe, a warranty. Let me just look at the documents that were
> provided to you as part of the credit file so I don't speak out of turn here.
> Q. So you're looking at—what are you looking at? Exhibit B or are you looking
> at something else?
> A. I think that was Exhibit—I don't have the Exhibit number here, but it's the
> exhibit with the contract, credit application, and other similar documents.
> Mr. Craig: If I may, Carlo, it's probably Exhibit E.
> Q. (By Mr. Sabatini) All right. So looking at— so I'm at Exhibit E, and what page
> are you looking at on this?
> A. There are—I'm actually looking at one, two, three, four, five, six, seven,
> eight—page nine is a tire and wheel protection plan. Page 11 it appears to be
> for a road side assistance plan, and page, I believe, 13 is for gap insurance.
> Q. All right. So those are the three ancillary products that generated the three
> payment recoveries identified on Exhibit B?
> A. I believe so.

(Joseph Dep., Doc. 57-4,14:8–15:9).

Plaintiff, additionally, mentions a number of documents that are not in the record and

a deposition which has not yet taken place, which allegedly establish November 9, 2016 as

the date Hyundai became aware of the credit adjustments. (Pl. Reply, Doc. 63, at 1–2 n.1).

The Court cannot consider evidence that is not in the record.

In Plaintiff's Reply Brief, he states, "Defendant's brief attempts to manufacture a dispute of fact as to when Hyundai first learned that it would receive the refunds…However, Defendant never states that it believes this date is incorrect." (*Id.*). Plaintiff's argument is not supported by the record. Defendant's Answer to Plaintiff's Statement of Undisputed Material Facts denies the November 9, 2016 date, stating there is insufficient evidence to support that assertion. (Doc. 61, at ¶ 9). Defendant's Answer to the relevant assertion in Plaintiff's Amended Complaint states, "Defendant is without sufficient information to admit or deny the allegations in Paragraph 16 of the First Amended Complaint." (Am. Compl., Doc. 32, at ¶ 16; Answer, Doc. 36, at ¶ 16). Moreover, Defendant's Statement of Undisputed Facts asserts, "On January 23, 2017, Hyundai received a notice of credit on Plaintiff's account." (Doc. 58-6, at ¶ 8). Contrary to Plaintiff's argument, Defendant has consistently contested Plaintiff's assertion that the date Hyundai received notice of the credit adjustments was November 9, 2016.

Plaintiff has not met its burden to show the absence of a genuine issue of material fact as to the misstatement of Plaintiff's debt, specifically as to when Hyundai learned of the reduction to be made to Plaintiff's debt as a result of the three credit adjustments.

Second, Plaintiff argues that the Letter was "misleading and deceptive because it gives the impression that the balance will remain constant, even though the balance could—and in this case did—decrease because of the refunds." (Pl. Br., Doc. 60, at 13). The language of a debt collection letter is deceptive in violation of the FDCPA when "it can be

reasonably read to have two or more different meanings, one of which is inaccurate."

*Brown,* 464 F.3d at 455. Plaintiff argues, "The least sophisticated debtor could interpret a

'total due' as either being a static amount (which in this case would be false) or a dynamic

amount (which in this case would be true)." (Pl. Reply, Doc. 63, at 4).

Plaintiff relies on three cases to support his argument: *Michalek v. ARS Nat. System.*

*Inc., Lukawski v. Client Servs,* and *Wilkerson v. Bowman.* (Pl. Br., Doc. 60, at 13–15). In

*Michalek* and *Lukawski*, debt collectors sent collection notices which did not inform the

debtor that their balances would accrue interest. *Michalek v. ARS Nat. Sys., Inc.,* No. 3:11-

CV-1374, 2011 WL 6180498, at *4 (M.D. Pa. Dec. 13, 2011); *Lukawski v. Client Servs., Inc.,*

No. 3:12-CV-02082, 2013 WL 4647482, at *3 (M.D. Pa. Aug. 29, 2013). These cases are

distinguishable from this matter. The letters in those cases were found to be misleading

because they failed to disclose that interest would accrue on the accounts. The debt

amount, therefore, was dynamic because it was constantly increasing as interest accrued.

The reason that those letters were misleading is not as easily applied to the facts of this

case. There is no evidence that Plaintiff's account was subject to interest nor that Defendant

attempted to conceal that fact when in contact with the Plaintiff. Other than the one

modification that decreased the amount due, there is no evidence that the debt amount was

inconsistent. The amount due on Plaintiff's account was not dynamic the way that a loan

subject to interest is dynamic because the amount was not constantly increasing. Therefore,

the holdings in *Michalek* and *Lukawski* are not instructive here. *Wilkerson v. Bowman* is

likewise not applicable. *Wilkerson v. Bowman*, 200 F.R.D. 605, 608 (N.D. Ill. 2001). The

collection letter in *Wilkerson* contained "a list of potential but uncalculated additional

charges, including 20% interest on a figure [the plaintiff] cannot calculate, and lacking any

information about the degree, if any, to which rebates will reduce her liability." *Id*. The letter

Plaintiff received did not list any potential charges or any charges that he would have to

calculate himself. Instead, it listed only one charge–the total amount due. (*See* Letter, Doc.

58-3, at 9–10).

Therefore, there remains a genuine issue of material fact as to whether the letter

was misleading because it failed to state the amount due was subject to change. Plaintiff

has not met his burden and is not entitled to summary judgment on this question.

### B. Defendant's Motion for Summary Judgment

Defendant's first argument in its motion for summary judgment is that it stated the

correct balance in the December 11, 2016 Letter because "Hyundai did not reduce the

balance to $11,566.56 until January 23, 2017." (Def. Br., Doc. 58-1, at 4). This argument is

unsubstantiated. Defendant cites Karun Joseph's deposition in support of its argument.

However, the testimony only confirms the amount that was due on Plaintiff's account as of

January 24, 2017:

> Q. So the new amount here, the $11,556.56, that's the amount that was owed
> to Hyundai on January 24th, 2017 –
> A. Correct.
> Q. – Is that right? And since January 24th, 2017, that amount has never
> changed, right?
> A. Correct.

(Joseph Dep., Doc. 58-2, at 50:23–51:4). Joseph's testimony does not provide any indication of when Hyundai learned the credit adjustments were applicable to Plaintiff's account.

Defendant also cites the "Hyundai Motor Finance Payment History" of Plaintiff's account. (["Payment History"], Doc. 58-2, at 12, Ex. B). This document itemizes the amount of each of the three credit adjustments applied to Plaintiff's account as well as listing the "Txn Date" as January 23, 2017 and the "Effective Date" as January 20, 2017 for each adjustment. (*Id.*). Drawing all inferences in favor of Plaintiff, this document only demonstrates that the payments were applied to Plaintiff's account in January. This document does not resolve the question as to when Hyundai received notice of the credit adjustments.

Second, Defendant argues it is entitled to summary judgment because "Plaintiff does not allege that Constar engaged in any collection activity after it mailed the accurate December 11, 2016 letter," meaning Defendant "could not and did not violate 15 U.S.C. §§ 1692e, e(2)(A) or e(10) after December 11, 2016." (Def. Br., Doc. 58-1, at 5–6). Plaintiff does not assert Defendant violated the FDCPA after December 11, 2016; Plaintiff alleges that the December 11, 2016 letter violated the FDCPA. (*See, e.g.,* Pl. Br., Doc. 60, at 7).

Defendant further argues, "[T]here is no authority for the proposition that the FDCPA requires a debt collector to communicate further with a consumer where there is a later credit on the account as long as it does not engage in further collection activity." (Def. Br.,

Doc. 58-1, at 6). While Defendant may have ceased all debt collection activity after December 11, 2016, that fact is immaterial. The focus in this matter is on the December 11, 2016 letter. Defendant's decision to stop attempting to collect the debt after it sent the Letter does not relieve it of its obligation under the FDCPA to accurately state the amount of debt due when it sent the December 11, 2016 letter.

Defendant next argues that pursuant to Section 1692g(a)(3) of the FDCPA, it was permitted to "assume the balance provided by its client was correct" because "Plaintiff never disputed the debt while Constar was attempting to collect it." (Def. Br., Doc. 58-1, at 5(citing 15 U.S.C. § 1692g(a)(3)). The relevant section mandates what contents must be included in a notice of debt sent to a consumer, including "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(3). This provision does not insulate Defendant from liability if its Letter used false statements to collect a debt. There is "no indication that Congress intended to require debtors to dispute their debts under Section 1692g before filing suit under Section 1692e and in fact, the statutory language suggests the opposite." *McLaughlin*, 756 F.3d at 247. Requiring a consumer to dispute the debt "would have the effect of immunizing false statements that a consumer failed to promptly dispute." *Id.* at 248. "A contrary result would subvert the FDCPA's salutary purpose of eliminating abusive debt collection practices." *Gigli v. Palisades Collection, L.L.C.*, No. 3:CV-06-1428, 2008 WL 3853295, at *7 (M.D. Pa. Aug. 14,

2008)(citations omitted). Therefore, Plaintiff had no obligation to dispute the debt under Section 1692g.

Defendant's citation to *Richmond v. Higgins* is inapposite. (Def. Br., Doc. 58-1, at 5). In that case, the plaintiff's attorney was aware of the basis for his client's potential debt adjustments upon receiving a collection letter, but still did not dispute the debt within the thirty-day period. *Richmond v. Higgins*, 435 F.3d 825, 829 (8th Cir. 2006). In this case, there is no evidence to suggest that Plaintiff knew he had any basis for disputing the debt. Plaintiff states that he "first learned that Defendant's collection letter contained an inflated balance shortly before August 4, 2017." (Pl. Answer to Def. Statement of Facts, Doc. 59, at ¶ 9). Unlike *Richmond*, Plaintiff could not have disputed the debt within thirty days of receiving the Letter because he asserts as a fact that he did not know it was incorrectly stated.

Defendant's final argument is that it is entitled to summary judgment because there is no dispute that it can meet the bona fide error defense. (Def. Br., Doc. 58-1, at 7–9). Plaintiff argues in response, "[T]here is no evidence in the record that can support the defense, because Defendant did not have policies and procedures which were reasonably adapted to avoid this type of error." (Pl. Br., Doc. 60, at 17).

The FDCPA's bona fide error defense provides:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). Therefore, Constar must demonstrate: (1) the alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such errors. *Beck v. Maximus, Inc.*, 457 F.3d 291, 297–98 (3d Cir. 2006). The Supreme Court has interpreted the third prong to be "more naturally read to apply to processes that have mechanical or other such 'regular orderly' steps to avoid mistakes—for instance, the kind of internal controls a debt collector might adopt to ensure its employees do not… make false representations as to the amount of a debt, § 1692e(2)." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587, 130 S. Ct. 1605, 1614, 176 L. Ed. 2d 519 (2010).

Defendant's Vice President of Operations, Joseph Lustek, stated in a declaration, "Constar never received a notification from Hyundai of any credit adjustment to Plaintiff's account." (Lustek Decl., Doc. 58-3, at ¶ 16; *see also* Def. Statement of Facts, Doc. 58-6, at ¶ 13; Pl. Answer to Def. Statement of Facts, Doc. 59, at ¶ 13). Without having knowledge of the adjustment, Defendant has demonstrated, and Plaintiff does not contest, that it did not act intentionally when it used the incorrect amount on the Letter and that it was a bona fide error. Defendant has thus established the first two prongs of the bona fide error defense.

Defendant argues that it has met the third prong of the bona fide error defense because it has procedures in place to avoid this error:

> For at least the past nine years Hyundai regularly reports any credit adjustments or payments it receives directly from consumers to Constar via e-mail. Once Constar receives these emails, its customer service group

immediately informs the accounting group at Constar and adjusts the balances on the same day it receives notice.

(Def. Br., Doc. 58-1, at 8). Joseph Lustek specifically explained the procedure as follows:

There really—the only procedure that we currently have in place, it's an unwritten procedure that Hyundai notifies Constar of direct payments and credit adjustments via e-mail. Our client service department notates the account and sends the information to our accounting/finance department to make any necessary adjustments.

(Lustek Dep., Doc. 57-3, at 15:12–18). Lustek explained that this has been the procedure

since he began working at Constar:

Q. Okay. Now, you also mentioned that there was an unwritten policy that Hyundai was going to send these credit adjustment e-mails to Constar. Is that accurate?
A. Yes. It's pretty much unwritten. I mean, it was in place before I joined the organization nine years ago. It's just the procedure on how it's done.

(Lustek Dep., Doc. 58-5, 19:22–20:2). Lustek testified that Constar regularly receives these

emails from Hyundai:

Q. How often has Constar received such a notice?
A. I don't know the exact answer. It's throughout the month. It's a part of our daily business activities, day-to-day basis, based on the number of accounts we have. Whenever there's a credit adjustment.
Q. Okay. You might now know the exact number. Is it a common occurrence, though, for Constar to receive notice of this credit adjustment from Hyundai? …
A. Yes. It will happen several times throughout the month.

(*Id.* at 17:3-13). However, there is no formal policy that requires Hyundai to send an email

notifying Constar of a credit adjustment. When asked, "Is there any written agreement

between Hyundai and Constar where Hyundai says it will always forward a notice of credit

adjustment to Hyundai," Lustek replied, "Not that I'm aware of." (*Id.* at 20:21–24). Hyundai's

22

representative, Karun Joseph, confirmed the lack of a written policy regarding credit

adjustments between itself and its debt collectors:

> Q. So when those recoveries are applied, what's the process that you use to
> update the balance then with the debt collector after you've received those
> refunds?
> A. When we're notified that there's been a payment applied, we would normally
> email the debt collector to update the balance.
> Q. Is that a written policy?
> A. It's a practice.
> Q. Is it a written policy?
> A. I don't believe so.

(Joseph Dep., Doc. 57-4, at 15:15-24). Joseph testified that Hyundai does not have an

internal procedure to ensure a debt collector is notified of a credit adjustment:

> Q. So it sounds to me like right now there really is no process in place that
> makes it reasonably likely that the debt collector is ever going to learn that a
> refund has been received on the account; is that accurate?
> A. In this case when there is refund [sic] that arrives after the account is already
> assigned, that's correct.

(*Id.* at 60:25–61:1-6; *see also Id.* at 60:14-18 ("Q. Is there any proceeder [sic] in place to

make it more likely that the servicing team will notice that the account has been assigned to

a collection agency and that therefore this email should be sent to the agency? A. Not at

this time.")).

Without receiving a notice of a credit adjustment from Hyundai, Constar assumes the

debt is reported accurately. Joseph was asked, "Could Constar have contacted Hyundai to

determine if the balance had decreased due to a credit adjustment?" (Joseph Dep., Doc.

57-3, at 21:8-9).

A. There would be no reason to...When Hyundai places an account here with us, all the accounts are defaults. And we assume that the balances that they are placing with us are accurate and we only make adjustments when they notify us.
Q. So, again, you said that you're assuming that the balances are accurate. Has Hyundai made any type of guarantee that the balance information it provides to Constar will be accurate?
A. Not that I'm aware of.

(*Id.* at 21:11-22).

Constar's identified procedure is an unwritten practice that relies on Hyundai to notify Constar of any credit adjustments by email. Plaintiff argues there is no written procedure in place to prevent this error from occurring. (Pl. Br., Doc. 60, at 17–19). Defendant responds, "Case law establishes that a written procedure is not required to establish a bona fide error," but cites no case law to support this assertion. (Def. Br. Opp'n., Doc. 62, at 6). There is no indication in the text of the FDCPA that the procedure must be a written policy. *See* 15 U.S.C. § 1692k(c).

Defendant may not be required to possess a written procedure, but the processes must be reasonably adapted to avoid the error at issue in this case. Defendant argues that its informal procedure is reasonably adapted to avoid this error because "Constar is not aware of any other instance where Hyundai failed to notify Constar of a credit adjustment." (Def. Br., Doc. 58-1, at 9). When asked, "Are you aware of any other cases where Hyundai received a credit adjustment and did not provide notice to Constar about the credit adjustment?" Lustek replied, "No, I'm not." (Lustek Dep., Doc. 58-5, at 20:25–21:3).

24

Some courts have held that the fact that there were no errors in the past cannot support a finding that the policies were reasonably adapted to prevent an error. The Ninth Circuit held, "The fact that the creditor provided accurate information in the past cannot, in and of itself, establish that reliance in the present case was reasonable and act as a substitute for the maintenance of adequate procedures to avoid future mistakes." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008). The District Court of Maryland held, "[I]n the face of a discoverable error, a debt collector cannot invoke the bona fide error defense solely on the ground that the creditor's submission of information concerning the debt to be collected had, in the past, been accurate." *Young v. Thieblot Ryan, P.A.*, No. CIV.A. ELH-11-01562, 2012 WL 6698632, at *7 (D. Md. Dec. 21, 2012). Other courts, such as the District Court of Delaware, have held, "Generally, a debt collector may reasonably rely upon information provided by a creditor who has provided accurate information in the past." *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991)(holding ultimately the issue of whether the reliance was reasonable was a matter for trial). Defendant cites a Seventh Circuit case where a debt collector's reliance on erroneous account information provided by the creditor was a bona fide error. *Abdollahzadeh v. Mandarich Law Grp., LLP,* 922 F.3d 810, 817 (7th Cir. 2019)).

While in some cases it may be reasonable for a debt collector to rely on a creditor who previously provided accurate information in the past, in this case, Constar does not know whether Hyundai would always notify Constar of a credit adjustment. When asked "Do

you know if it's Hyundai's procedure to make sure it always sends a notice of a credit

adjustment?" Constar's representative replied, "I do not know." Defendant is relying on

Hyundai to maintain a procedure to provide updates on credit adjustments. However,

Hyundai admitted that it does not even have its own procedure to ensure debt collectors are

informed that credit adjustments were applied:

> Q. So it sounds to me like right now there really is no process in place that
> makes it reasonably likely that the debt collector is ever going to learn that a
> refund has been received on the account; is that accurate?
> A. In this case when there is refund [sic] that arrives after the account is already
> assigned, that's correct.

(Joseph Dep., Doc. 57-4, at 60:25–61:6).

While Defendant has offered some evidence of one informal practice it undertakes to

avoid misstating debt amounts, it is unable to explain how the error in Plaintiff's letter

occurred. Moreover, Defendant has not explained any procedures in place that are

designed to prevent the specific error of overstating the debt amount to a consumer when a

credit adjustment is applicable to his account. There are no "mechanical or other such

regular orderly steps" that Constar takes in order to avoid the specific error that occurred in

this matter. *Jerman*, 559 U.S., at 587, 130 S. Ct. 1605. Therefore, Constar has not met its

burden to show undisputed evidence that its procedure was reasonably adapted to avoid

falsely overstating the debt amount when there were credit adjustments that were applicable

to reduce the debt amount.

Defendant also explains its "written policy and procedures for handling disputes received from consumers." (Def. Br., Doc. 58-1, at 8; Constar Dispute Handling Policy, Doc. 58-3, Ex. C). However, the procedures regarding consumer-initiated disputes are not relevant to this matter, where neither Plaintiff nor Defendant alleges that Plaintiff submitted a dispute to Constar. In order to avail itself of the bona fide error defense, the Defendant must demonstrate that the procedures are adapted to avoid the specific error that occurred; not an unrelated error. *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006)(holding procedures should be reasonably adapted to "avoid the specific error at issue"). Therefore, the general procedures used to comply with the FDCPA are not sufficient to prove Defendant had a procedure to avoid overstating balances to debtors where credit adjustments have not yet been applied.

After reviewing the evidence upon which Defendant relies to support its assertion that it is entitled to summary judgment on the bona fide error affirmative defense, the Court finds it has not met its burden to demonstrate that there are no issues of material fact. Whether Constar's reliance on Hyundai is a procedure that is reasonably adapted to avoid the error at issue is a genuine issue of material fact. Plaintiff presented evidence that neither Constar nor Hyundai maintains a procedure to avoid the error that occurred in this matter. Because Defendant has not met its burden to show undisputed evidence that the bona fide error defense is satisfied, it is not entitled to summary judgment on the affirmative defense.

## V. CONCLUSION

Neither party has met its burden to prove no genuine dispute of material fact exists regarding the date Hyundai received notice of the credit adjustments applicable to Plaintiff's account. Therefore, neither the Defendant nor the Plaintiff is entitled to summary judgment on the question of whether the Letter was false in violation of Section 1692e. Plaintiff has not demonstrated the absence of a genuine dispute of material fact as to the Letter being misleading and deceptive in violation of Section 1692e for its failure to state the debt amount was subject to change. Plaintiff is consequently not entitled to summary judgment on this question. Finally, Defendant did not meet its burden to prove no genuine dispute of material fact exists regarding its assertion that it committed a bona fide error under Section 1692k(c); and, therefore, Defendant is not entitled to summary judgment on this issue.

For the foregoing reasons, this Court will deny Plaintiff's Motion for Summary Judgment (Doc. 56) and deny Defendant's Motion for Summary Judgment (Doc. 58) as set forth in this Memorandum Opinion.  A separate Order follows.

Robert D. Mariani
United States District Judge